Good morning, ladies and gentlemen. Judge Sykes and I are pleased to have sitting with us today Chief Judge Simon of the Northern District of Indiana. So welcome. So our first case for argument is 1756 W. Lake Street v. American Chartered Bank. Mr. Spiragus. May it please the Court. Good morning. My name is Constantine Spiragus and I am the As one matter of housekeeping, we have filed a motion to correct the caption before the Court. This motion has not been responded to or objected to. We believe that it is administrative and not substantive in matter. The problem here is based on the Notice of Appeal. The docket reflects that 1756 is a party in interest as opposed to the appellant and names Mr. Bamboulas, the owner of that. Okay, that's fine. Why don't you explain in words of one syllable the transaction, this debt forgiveness and its relation to the loan? I'm happy to do so, Your Honor. This case arises out of a original loan, promissory note and mortgage related to the property at 1756 W. Lake Street, where 1756 W. Lake Street LLC was the primary obligor on the promissory note and the mortgage or under the debt instrument. The lender was American Chartered Bank. Subsequently, after a default, there engaged a series of forbearance agreements, I believe all in total approximately 12 such agreements, extending certain maturity dates, modifying interest rates and reamortizing loans. Over the course of those forbearance agreements, essentially what ended up happening is that two affiliated companies, 1756 on Lake Street and the other, began to cross-guarantee each other's obligations, provided additional collateral and security for each other's obligations, amongst various other consideration provided to the bank in exchange for the various accommodations. It appears that these transactions were arm's At some point, the bank required, in connection with yet a separate loan obligation to yet another affiliated company for purposes of acquisition, that both 1756 and 1800 provide deeds in lieu of foreclosure to be held in escrow by the bank so that in the event that there was a default that the bank could presumably record the deed and circumvent the foreclosure process. That brings us up to speed basically in connection with this instant litigation. At some point, a default does occur. At some point, a default under the forbearance agreements does occur. They have the deed, but there is a little bit of a twist here. The deed does not apparently go directly to the bank. Instead, it goes to some affiliated holding company of the bank by the name of Sherston Real Estate, a co-defendant in these proceedings. Now, the entirety of... Why is that important? Well, it's important certainly in the event that this matter is remanded, because it was not an issue even addressed in the court below, because Sherston objectively does not give any consideration for the receipt of the deed. Certainly, the argument can... I don't know. It's just an affiliate of the bank? Allegedly, Your Honor. It's only...  Well, it's only found in a single statement in a footnote to the motion for summary judgment that they're affiliates and that they should be treated... Well, surely you can look it up to see where they're affiliates, right? And we have, but... You didn't contest it during the summary judgment proceedings, correct? It was not, and it was not even a point that was really raised, and again... So can we forget about it? We can for the purposes of appeal, sir. Okay, let's forget about it. In any event, after the deed is recorded, the debtor subsequently files a bankruptcy petition under Title 11 U.S.C. 1756 West Lake Street LLC is the debtor in possession. The debtor in possession then files a proceeding to avoid the fraudulent transfer under Section 548 of the Bankruptcy Code in the district court. And this is important because it gets to the question regarding this court's jurisdiction and the notice of appeal and the proper parties to this appeal. Because ultimately... No, I'm interested in the transaction. Fair. In terms of the transaction, the complaint is filed setting forth various allegations, which we argued below and reiterate here, make out a prima facie case for a fraudulent transfer constructively. In other words, it was a transfer of the debtor's property made at a time that the debtor was insolvent and that it was not made for reasonable... Wait, I don't understand. Your company transferred the deed to the bank? Correct. So what's the problem? Well, the problem is that the district court has to review the value given and the value received to determine whether or not reasonably... Well, what was the value? All right, so you gave the bank and what did you get in exchange? Well, the underlying opinion is a little bit murky in this regard. Judge Kocouris... Well, you de-murk it, right? Now, you owe the money, you're broke, you give the bank, the creditor, you give them the deed. Now what? The underlying court finds, based on a subsequent alleged sale to a third party by the bank, that the fair market value of the real estate is 1.6. So the bank sold your property and got money for it. They never closed the transaction. They didn't sell it? No. They still have your deed? That's correct. And to this date, and upon the most recent information obtained, this purported purchaser, now almost 18 months later, has still not walked away from the transaction, is still interested in concluding the transaction. I would posit that in our experience, these are not the actions of a typical investor motivated under normal market conditions. Typically, I would argue that an investor acquiring a piece of real estate, which is a fungible asset, if they're unable to utilize their assets to acquire this asset at a particular given time, they're going to move on from the deal. They're not going to wait indefinitely. I don't understand. What is the significance of all this? The bank has the deed, whether it's sold it or hasn't sold it. You don't have it. Correct. So what is it you want? Well, we had an appraisal. What do you want? Well, we want the court to return, undo the transaction under the fraudulent transfer statute. What is the fraud? I don't understand. Well, the fraud is not actual, but constructive in that the bank I don't know what that means. Well, constructive fraud would indicate that the value given for the transaction is not reasonably equivalent. You know, that's a pretty mushy standard. And you've got $1.5 million in debt relief. That's uncontested, right? And you've got an appraisal on the other side of the transaction that it's worth $1.3. I know there's an appraisal at $1.7 as well. But then Judge Kokoros also details all of the other benefits that your client received in the form of interest rate modification and extensions of the loan and all these nine forbearance agreements over the course of several years. And so with this standard being reasonably equivalent value and that being a pretty sort of mushy kind of standard, why isn't it met by his findings and you didn't present any evidence of the contrary? Well, there were dueling appraisals. The appraisal provided by the plaintiff debtor was for $1.7 million. If we can assume that the debt forgiveness, which was equal to $1.5 million, was the value provided, then at least we know if the appraisal is unopposed, which it was. And if the court below must take all inferences in favor of the non-moving party, it should have accepted the debtor's $1.7 million appraisal. But you're missing Judge Simon's point. There's more involved than just the land. And no doubt about it, but it conflates. In the one instance, we believe that the opinion goes too far, and in the other, not far enough. So as an example, to this particular point, if we're going to talk about the totality of the circumstances, which is what Judge Kors gets into when he determines that assuming the $1.7 million value, the bank gave all of this additional value to the debtor, then he must look at both sides of the ledger. He must also look at and conduct an analysis of what the bank received in return. Now granted, this may not... But you didn't present any evidence of that. What was the evidence that you presented to Judge Kors of the benefit that the bank received by forbearing for all those years? The evidence is identical to the evidence that was presented by the bank. It's the forbearance agreements themselves and the terms and conditions contained therein. The real problem here is that nobody tried to quantify the value of the intangible indirect benefits. We have the dueling appraisals. The court accepts the lower one in conjunction with the purchase offer because they're the same, $1.5 million. There's $1.5 million in debt. $1.3 million is the bank's appraisal and the bank's purchase offer that it has from a third party. The debt forgiveness is $1.5. Your appraisal is $1.7. Accepting your appraisal leaves a $200,000 gap and there's no quantification of the indirect benefits that fills that gap, and that's the issue here. Neither side quantified it, so we have a failure of proof. Correct, and we agree precisely with that point that it was the bank's burden to precisely quantify that indirect value given to the debtor. Why isn't it your burden as the plaintiff here? Well, it's important because the case law requires that in the event a creditor is going to argue indirect value, that the value be definable with some precision. Well, right, that doesn't mean that it's the bank's burden to prove the case. It's your burden to prove the fraudulent transfer. So you have to prove that those indirect benefits weren't worth $200,000. There's no doubt that at some point the burden would shift to the plaintiff here. Is that our case law? I don't think so. But assuming that there was some attempt to quantify it, then it would shift the burden, but that attempt was never made. The problem here is that nobody made any effort to quantify the indirect benefits, so we don't know, and Judge Krikoris didn't quantify them either. He just said it makes up the difference, there's reasonably equivalent value, we're good to go. No fraudulent transfer here. So, you know, there's really kind of a step in the analysis that's missing, as I understand this case. I agree, and I can see... How solid is your $1.7 million appraisal? It's solid enough that I can tell the court that shortly thereafter the debtor has received multiple cash offers in excess of $2 million. Is that in the record? It is not, Judge. I didn't think appropriate. Now, who made this $1.7 million appraisal? There have been at least two such offers that I'm aware of. The names of the actual offerors... I'm talking about the appraisal. Oh, the appraisal was conducted by an appraiser selected by the debtor that came in at $1.7. Well, if the debtor selects the appraiser, it's going to be a high appraisal, right? Not... I would argue not necessarily. One would hope that it would be objective and it would be accurate. The problem here is... Well, appraisal is hardly an exact science. No doubt about that, Your Honor, and we understand the struggle with that. What did he do to... What was his methodology? I believe it was both a comparison sales approach and there was also a cash flow approach with a capitalization rate to arriving at the valuation. The appraiser used both of those? Yes, Your Honor. I don't understand this. I don't understand that... ...answered the complaint and then they immediately moved for summary judgment. So why didn't your client ask for additional time to take discovery? It's just... The record is really thin here and it just seems to me that the response should have been, hey, this is premature. We've got a lot of work to do. We were not counsel below and I certainly can't read the mind of his former counsel. I agree with Your Honor. I agree that the record is extremely thin here. This case is one that ought to be decided on the merits given the underlying record. Before you sit down, I have a procedural question. There is a case, a parallel case going on in Judge Kennelly's court involving the same entities, correct? The affiliated entity and the bank, correct. Well, right, but they're all the same. I mean, the plaintiff and the entities are all the same and this is all emanating from the Lake Street bankruptcy and there's two deeds, there's two properties, one at 1800 Lake and one at 1756 Lake and this is the 1756 litigation. The other case that's pending in front of Judge Kennelly is the 1800 Lake property, but it's all the same transactions, all the same series of transactions, all the same forbearance agreements, it's all the same debt and the same analysis about the value of the 1800 property and the extent to which the reasonable equivalent value should consider the indirect benefits of all of these forbearance agreements and the interest rate reductions and the other intangibles is at issue in the other case. Isn't that right? Indeed. And we've got inconsistent rulings by two district judges involving the same set of transactions and package of real estate and loans. Correct. So why wasn't this case treated as a related case and consolidated with the case in front of Judge Kennelly? Again, I can't precisely answer that question. What I can tell the court is that each of the cases arise out of two separate bankruptcy filings. They should or likely have been consolidated both at the bankruptcy level. Right, but we have a real danger of prejudice from inconsistent rulings about the value of these intangibles. No doubt about it and one of our arguments is that if the court is going to take into account the totality of the circumstances, it must look at the value including the 1800 property which has over a million dollar equity. And Judge Kennelly denied summary judgment and said there are factual issues here about the value of the indirect benefits and whether they're sufficient to make up the gap between the plaintiff's assessment or plaintiff's appraisal and the debt forgiveness. The same debt forgiveness, all the same. Same analysis regarding the failure to quantify with any precision the value given. And the civil cover sheet for this case that was filed with this action didn't identify the other case as a related case. I do not know the answer to that question. I looked at it and it's not there. So there was never a judgment made by the executive committee in the district court about whether these were in fact related cases and ought to be considered together. Apparently no. Okay. Thank you, Mr. Chief. Thank you. Mr. Litwin. May it please the court. My name is Jordan Litwin and I represent the appellees in this matter, American Chartered Bank and as has been discussed Sherston Real Estate which is an affiliate that the bank uses to hold real estate as its charter doesn't permit it to do so directly. Your honors here if we just forget about the forbearance agreements and all that consideration and we just assume that the $1.7 million dollar appraisal that Lake Street has alleged is correct we're already over 88% in terms of reasonably equivalent value. So I would stipulate that there doesn't even need to be any more proof. We don't need to quantify any more consideration. We don't even need to get into the forbearance agreements. If all it was was the debt forgiveness alone we'd be at over 88% of the value for the property that was given uncontestedly in debt forgiveness. That alone should satisfy a reasonably equivalent standard. This court has always held that no dollar for dollar comparison is required. There's no set determination for the circumstances. You have a third party here in arm's length transaction, real estate subject to fluctuation and differences in opinion on value and you have over 88% value given just from the debt forgiveness. Now on top of that you have the forbearances if we need to get to them. You have four and a half years of consideration that was given related to that and no one has contested that all of that should be considered as part of the reasonably equivalent value. Some of it hasn't been quantified. Some of it can't be quantified or at least not very easily. But some of it is pretty clear. A $100,000 new loan given to Lake Street right after we took the deed in lieu in Ezra. The interest rate reductions alone are easily quantifiable aren't they? They are Your Honor and perhaps we should have quantified them more but I think that the forbearances do speak for themselves in that regard. Have you done that math? We haven't done all the math. We've done some of it. Does it get us to the $200,000 gap? It doesn't Your Honor. But the $100,000 additional loan, the interest rate reductions and then on top of that you have hundreds of thousands of dollars of new loans that were given to the affiliates and this isn't What's four years of continued solvency worth? That's a good question Your Honor. I mean that is reasonably quantifiable by an expert witness maybe? Maybe Your Honor. I mean we we didn't get to all of that because we didn't get to trial on this. Well right, it was decided on the summary judgment record but this could have been put in at summary judgment to see if there's actual material facts in dispute on that. But Your Honor, I don't think there are material facts in dispute even without that. Even assuming that's worth zero, there's no material facts in dispute. First of all, you have over 80% of value without even getting to the forbearances. Then you have a $100,000 new loan. Then you have hundreds of thousands of dollars of additional new loans given to affiliates. And not just affiliates but companies, sister companies that were all owned by the same individual, all run as a co-mingled enterprise with overlapping ownership. This is a family run company. Well in principle one could I don't know if it's worth bothering with but in principle one could determine the value of that additional several years of solvency. I agree, Your Honor. They made money, they wouldn't have made if it hadn't been solved. Yes, Your Honor. In cases considering reasonably equivalent value the courts have not done a lot of math calculations. This hasn't been a lot of let's precisely calculate this, let's precisely calculate that, let's add it up, let's see if we got to 100%. That's just not necessary because the code says reasonably equivalent value. And courts have struggled with this. Some courts, as this court has recognized and disagreed with, used to use 70% as a benchmark. Here we have over 88%. But I think what this court has always emphasized is you have to look at all of the circumstances here. There's no bright line rule. And what you have here, as this court has struggled with, I think in the prior questions is something seems off here. And what seems off is you have a third unrelated party, you have an arms link transaction, you have substantial value conveyed and you have a lot more value that either hasn't been quantified or can't be quantified. And under the circumstances this isn't a typical fraudulent conveyance action. This isn't a typical constructive fraud situation. Did anyone question the transfer of the deed? Whether that is an appropriate substitute for foreclosure? No one has, Judge. That's just accepted as permissible alternative? Your Honor, that has not been raised. I mean, it's a lot, you know. It converts a deed which is not the sale of property into a transfer of property. It does, Your Honor. But apparently this is okay? Where you come from? Your Honor, it's not atypical that in a context of a situation where there's default and where the bank enters into forbearance agreements that at some point depending on the circumstances, sometimes it happens, sometimes it doesn't. Here it didn't happen until three or four months into the transaction that the bank says, okay, if you want us to continue you need to give us more protection. And there the idea was, you need to give us this deed in lieu. We're going to hold it in escrow. We're going to put it in a drawer and if you default under this agreement that you've agreed to, we're then going to record it. And that's what happened here. But I think that under those circumstances this is an arms-length transaction and you're already at 88% of the value before you even got there. Is there, though, in light of the suit that's ongoing in front of Judge Connelly, a danger of double-counting the indirect benefits? I don't think so, Your Honor. That case is, first of all, very different. It involves a different property and a greater gap in the appraisals, right? Much greater, Your Honor. It's a different plaintiff. It is a sister... All affiliated companies. This is all affiliated. They're all in bankruptcy. They were both single-asset LLCs, Your Honor, owned by the same individual. And it all involves the same series of transactions, the same loan basis, and everything is related. Other than the deeds in lieu themselves, every single document that these parties signed together, they were the same documents. But, Your Honor, the massive distinction that I think Judge Connelly made is that that case is not as close of a call. There's a much bigger value gap between... I think that at trial, I'm going to be able to easily show that their appraisal is wrong and that we actually did give reasonably equivalent value. But right now, if we assume all the facts in their favor, that value gap is big. Well, right, but you're going to want to count the same indirect benefits in that case that you want to count here. That case I'll have to, Your Honor. This case I don't have to. I respectfully would... But Judge Koukouris did here. So we are going to have a double counting problem because as a matter of law, they were counted here to make up the $200,000 gap and in the case down the hall they'll be double counted as reasonably equivalent value for that deed. Well, Your Honor, Judge Koukouris does discuss that but in connection with... Barely. In connection with everything else, I think barely is telling because it's not necessary under the circumstances because you have such a close value even without it. Then you have all of these new loans. Let's just take the loans, Your Honor. You're talking about over $650,000 in new loans after we took this deed in lieu. We just need to cover $200,000 assuming you have to give 100% value. No, you have a very strong case. The question is whether this should have been independent of the case down the hall or whether they should be resolved by the same judge in a consolidated proceeding to avoid the double counting problem, to avoid resolving this case on an inadequate record. Your Honor, I think under the circumstances it's not necessary because you never have to get to that. Judge Koukouris considers it. He ropes it in with everything else. In Judge Kennelly's case, it's a much bigger value difference. That is probably going to have to be proven at trial. But in Judge Koukouris' case, you've got over 88% value before you even get to the forbearances. Then $650,000 in new loans. Then four and a half years of forbearances. Ten maturity date extensions. Oh, right. It's a strong case. Is that it? Unless Your Honors would like me to address the jurisdictional issues here. You need a ruling from us that excludes the indirect benefits. To take the case in front of Judge Kennelly. I don't think you're asking for that. What you're saying, as I understand it, is that you start with the 88% and then it's obvious that there were significant benefits from all these loans and so on. And if it's off by a few cents, it's hardly worth a trial. Yes, Your Honor. Isn't that what you're saying? I don't think you even need to get to the forbearances to get reasonably equivalent value under the circumstances. You could have just stopped right there and you've got it. Over 88% on real estate with an unrelated third party arm's length transaction, seems pretty clearly reasonably equivalent value. But you even take one step down that road and you're closing that gap right away. So I don't think you even need to get to the indirect consideration, to the unquantifiable or hard to quantify. In my opinion. Okay, well thank you Mr. Whitman. Thank you, Your Honor. So Mr. Spragus, your time has expired but you can have another minute if you have anything further. Thank you, Your Honor. And I'll be very brief. To the extent that we're going to start taking into account any of the indirect benefits that may have been given to Look, you obviously got indirect benefits, right? No doubt about it. You got several years of solvency and you got new loans. What more do you need? I don't understand. You're going to fall short by $50 or something? Absolutely not, Judge. But if we're going to look at I don't get it. It doesn't seem to me worth legal fees and delay to be arguing over whether that whether the new loans and the this and the that and the lower interest rates and so on amounted to uh you know $200,000 or $150,000 or what? Because respectfully, if we I mean, law is not exactly an exact science, right? No question about it, Judge. You're going to have expert witnesses and they're going to be debating and one is going to say, oh wow three years of solvency and we've done this and that and the other. Do you really think you're going to come up with a precise number? No, but even if there were to be No precise number. So what's the point? The point is that when we start getting into the indirect benefit analysis, you start to look at the totality of the circumstances here. And if you start looking at the totality of the circumstances, then yes compartmentalizing just what 1756 received without taking into account what the bank received in return. Because if the indirect benefits were on account of the direct benefits to the 1800 entity and the 1800 entity has over a million dollars in equity and this property has over $200,000 in equity we're not looking to make up that small gap. Now we're looking at making up a gap in excess potentially of $1.2 million. And so the error that is made below is the incomplete analysis the looking at the transaction solely on one side What's the $1.2 million? The $1 million in equity as alleged and per the appraisal in the 1800 property, the sister case and the $200,000 in alleged and as appraised equity. So you're talking about another property which you say is worth $1.2 million? $2.7 million versus $1.7 million. They did indeed your honor, but again when you start to compress these transactions you have to look at both sides of the ledger and what the bank received and gave. Do you think the bank got an extra $1.2 million? $200,000? Absolutely. Okay. Okay, well we'll try to unravel this horror. So thank you very much to both counsels. Thank you your honor.